UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWARD SIMPSON, | ) |
|              Petitioner, | ) ) ) |
|        v. | )     No. 1:18-cv-04031-JPH-TAB |
| WENDY KNIGHT, | ) ) ) |
|              Respondent. | ) |

**ORDER GRANTING MOTION FOR STATUS, DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

The petition of Edward Simpson for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. CIC 17-07-0018. Mr. Simpson's motion requesting the status of this case, dkt. [21], is **granted** to the extent this Order disposes of his petition. For the reasons explained in this Order, Mr. Simpson's habeas petition must be **denied**.

    **A.**    **Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B.     The Disciplinary Proceeding

On July 3, 2018, Investigator Poer charged Mr. Simpson with offense B-240/233, attempting to commit bribing/giving. The conduct report states:

> On 7/3/18 I, Inv. J. Poer was reviewing an incident from 6/29/17. On 7/1/17, Nurse B. Robbins reported in writing that offender Simpson, Edward 136480 approached him in C Corridor on 6/29/17. Offender Simpson asked Nurse Robbins if he would be interested in making an extra $1,000 per week. Nurse Robbins took the statement from offender Simpson to mean that offender Simpson himself would be the person to assist Nurse Robbins in obtaining an extra $1,000 per week. Nurse Robbins stated that he told offender Simpson "No" emphatically and ended the conversation with Simpson. I have been employed by IDOC for 24 years and have been an investigator for a total of 8 years. In my training and experience offenders will ask staff members questions to test and see if they are willing to traffic. A common method employed by offenders is to start by asking the staff person a seemingly innocent question like, "do you want to make more money?" If the staff person responds by indicating yes then the offender knows it is safe to ask questions more directly relating to how the offender and staff person can work together make more money. If the staff person ends the conversation then the offender's defense is that they didn't mean anything by asking the question.  My experience with this method is that it is common practice for offenders in IDOC facilities.
> In my professional experience, offender Simpson was attempting to give Nurse Robbins $1,000. Nurse Robbins ended the conversation before any details were discussed.

Dkt. 11-1.

On July 3, 2018, the screening officer notified Mr. Simpson of the charge and provided him with copies of the conduct report and screening report. Mr. Simpson pleaded not guilty and requested to call Nurse Robbins as a witness to ask if Nurse Robbins wrote the conduct report in 24 hours. This was denied because the conduct report was not written by Nurse Robbins. Mr. Simpson also requested "all evidence statements etc." and the original conduct report from 2017. Dkt. 11-2.  He was provided with the original conduct report. Dkt. 11-6.

On July 17, 2018, the disciplinary hearing officer held a hearing. Mr. Simpson pleaded not guilty and stated that 1) the conduct report should have been written by the staff who witnessed

2

the incident, 2) he had a final judgment from the court already in case CIC 17-07-0018, 3) there is insufficient evidence, and 4) the nurse misunderstood him.

After considering the conduct report, Mr. Simpson's statement, and the confidential letter, the hearing officer found Mr. Simpson guilty of offense B-240/233, attempted bribing/giving. The hearing officer's reason for the guilty decision was because the "Conduct report written by I&I who investigated the incident. Confidential witness statement. Conduct was issued as a rehearing, that's why case number is the same. $1,000 extra per week is amount that was attempted to bribe staff." Dkt. 11-5. The hearing officer imposed the following sanctions: a written reprimand; a 30-day loss of phone and commissary privileges; a 90-day loss of good-time credit; and a one-step demotion in credit class. *Id*.

Mr. Simpson appealed to Facility Head and the Indiana Department of Correction ("IDOC") Final Reviewing Authority, both of which were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C. Analysis**

Mr. Simpson raises four grounds in support of his petition for habeas relief: 1) there is insufficient evidence to support the charge; 2) he was denied an impartial decisionmaker; 3) his due process and equal protection rights were violated, as well as IDOC policy, because the conduct report was not written within 24 hours; and 4) his free speech, due process, and equal protection rights were violated because it was a misunderstanding. Dkt. 1.

**1. Sufficiency of the Evidence**

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir.

3

2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

Mr. Simpson was previously convicted of attempted trafficking. After this Court granted his petition for writ of habeas corpus on the grounds that there was insufficient evidence to convict him of attempted trafficking, *see Simpson v. Knight*, 2018 WL 2984846 (S.D. Ind. June 14, 2018), an Investigator issued a new conduct report based on his review of the prior conduct report and the witness statement from Nurse Robbins.

The new conduct report charged Mr. Simpson with attempted bribing/giving. Offense B-233, Bribing/Giving, is defined as: "Giving or offering a bribe or anything of value to a staff member, authorized volunteer, visitor or contractor or possessing, giving to or accepting from any person anything of value without proper authorization." Dkt. 11-9 at 7. The conduct report states that Mr. Simpson asked Nurse Robbins "if he would be interested in making an extra $1,000 per week." Dkt. 11-1. This is some evidence that Mr. Simpson was offering something of value to Nurse Robbins, a staff member. Mr. Simpson is not entitled to relief on this ground.

### 2. Denial of Impartial Decisionmaker

Mr. Simpson next argues that he was denied an impartial decisionmaker because the hearing officer did not consider his evidence, denied his question to Nurse Robbins, and reheard the same evidence even though a judge had previously granted his habeas petition because there was insufficient evidence. Dkt. 1 at 4.

A prisoner in a disciplinary action has the right to be heard before an impartial decisionmaker. *Hill*, 472 U.S. at 454. A "sufficiently impartial" decisionmaker is necessary in order to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie*, 342 F.3d at 666; *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the IDOC. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Mr. Simpson does not allege that the hearing officer was involved in the factual events underlying his disciplinary charge or in its investigation. The hearing officer considered Mr. Simpson's statement but was not persuaded by it. Dkt. 11-5. Mr. Simpson's question to Nurse Robbins—"[d]id you write the conduct report up in 24 hours?"—was denied because Nurse Robbins was not the author of the conduct report. Dkt. 11-2. Finally, although this Court previously granted Mr. Simpson's habeas petition for insufficient evidence, the prison was free to charge Mr. Simpson with an offense that fit the evidence against him. The Seventh Circuit has long held that "disciplinary proceedings do not implicate double jeopardy concerns." *United States v. Morales,* 312 F. App'x 823, 824 (7th Cir. Feb. 20, 2009) (inmate could be disciplined by prison and prosecuted by the government for same conduct); *Meeks v. McBride,* 81 F.3d 717, 722 (7th Cir. 1996) ("an acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge"); *Portee v. Vannatta,* 105 F. App'x 855, 858 (7th Cir. 2004)

5

("double jeopardy protections do not attach in prison disciplinary proceedings"). Mr. Simpson is not entitled to relief on this ground.

### 3. Conduct Report Not Written Within 24 Hours

Mr. Simpson argues that his conduct report was not written within 24 hours and that this failure violates IDOC policy and his due process and equal protection rights. Dkt. 1 at 5. Relief pursuant to § 2254 is available only on the ground that a prisoner "is being held in violation of federal law or the U.S. Constitution." *Caffey v. Butler*, 802 F.3d 884, 894 (7th Cir. 2015). Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Therefore, claims based on prison policy, such as the one at issue here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas review.").

Mr. Simpson attempts to cast his policy-based claim as an equal protection class-of-one claim but has not cited any authority for the proposition that class-of-one claims are available in the prison disciplinary context in the way Mr. Simpson proposes. His claim essentially is that although his due process rights were not violated, his prison disciplinary proceeding violated equal protection because his case was not handled in the same way as other cases.

Even if such a claim were available, Mr. Simpson cannot establish such a violation here. "The Equal Protection Clause guards against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016). "Class-of-one discrimination is illustrated when a public official, with no conceivable basis for his action other than spite or some other improper motive . . . comes down hard on a hapless private citizen." *Id.* (citation and quotation marks omitted). The proper standard for evaluating such claims is unsettled, *see id.* at 706, but the petitioner here cannot meet any of the three proposed standards. He has not shown evidence of specific animus and there was a rational basis for prison officials to pursue the conduct charge even though the report was not written within 24-hours, namely that his first disciplinary conviction for this conduct was vacated by the federal court on habeas review. There is no basis for the Court to conclude that Mr. Simpson was treated arbitrarily or irrationally, and thus he cannot establish a viable class-of-one equal protection claim.

Finally, inmates are afforded limited due process protections in prison disciplinary proceedings, and the fact that a conduct report was written more than 24 hours after an incident does not trigger any of the due process protections recognized in *Wolff*. 418 U.S. at 570-71. Accordingly, Mr. Simpson is not entitled to relief on this basis.

**4. Violation of Due Process, Equal Protection, and Free Speech Rights**

Mr. Simpson's final argument is that his due process, equal protection, and free speech rights were violated because his interaction with Nurse Robbins was a misunderstanding. This is essentially a challenge to the sufficiency of the evidence and the Court has already found that there was some evidence supporting Mr. Simpson's conviction. The Court has also already denied his

7

equal protection claim. Mr. Simpson points to no other denial of the limited due process to which he was entitled.

As to Mr. Simpson's free speech assertion, in *Beard v. Banks,* 548 U.S. 521 (2006), the Supreme Court addressed the balancing of a prison inmate's free speech rights and the interests of the prison in administering rules and regulations to promote safety and security within prison institutions. In upholding the broad authority of a prison to decide security matters for itself, with very little judicial oversight, the Court wrote:

> *Turner v. Safley*, 482 U.S. 78 (1987), and *Overton v. Bazzetta*, 539 U.S. 126 (2003), contain the basic substantive legal standards governing this case. This Court recognized in *Turner* that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. 482 U.S. at 93; *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. *See, e.g., Turner, supra*, at 84–85. As *Overton* (summarizing pre-*Turner* case law) pointed out, courts owe "substantial deference to the professional judgment of prison administrators." 539 U.S. at 132. And *Turner* reconciled these principles by holding that restrictive prison regulations are permissible if they are "'reasonably related' to legitimate penological interests," 482 U.S. at 87, and are not an "'exaggerated response'" to such objectives. *Id.*
> *Turner* also sets forth four factors "relevant in determining the reasonableness of the regulation at issue." *Id.* at 89. First, is there a "'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"? *Id*. Second, are there "alternative means of exercising the right that remain open to prison inmates"? *Id.* at 90. Third, what "impact" will "accommodation of the asserted constitutional right . . . have on guards and other inmates, and on the allocation of prison resources generally"? *Id*. And, fourth, are "ready alternatives" for furthering the governmental interest available? *Id*.

*Beard*, 482 U.S. at 529-30.

Applying the first *Turner* factor, the Court defers to prison authorities who wish to quash attempts to bribe prison employees or solicit them for illegal activities. The second *Turner* factor weighs entirely in the respondent's favor. Mr. Simpson has not argued any reason he needs to

discuss money-making opportunities with prison guards and there is no need for any alternative means of doing so.

The third factor also weighs in favor of the respondent. Allowing inmates to discuss financial opportunities with prison guards would likely have a negative impact on the prison's ability to maintain a safe facility and combat trafficking. Finally, the fourth factor weighs in favor of the respondent. Mr. Simpson has not identified any viable alternatives for the prison to further its interest in safety and security and the Court is not aware of any such alternatives. With the *Turner* factors falling all in the respondent's favor, Mr. Simpson's question to Nurse Robbins of whether Nurse Robbins was interested in making an extra $1,000 a week was not protected by his First Amendment free speech rights. Mr. Simpson is not entitled to relief on this ground.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Simpson to the relief he seeks. Accordingly, Mr. Simpson's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 6/30/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

EDWARD SIMPSON
136480
PENDLETON - CIF
CORRECTIONAL INDUSTRIAL FACILITY
Electronic Service Participant – Court Only

Abigail Recker
INDIANA ATTORNEY GENERAL
abigail.recker@atg.in.gov